Good afternoon. Today, we're hearing oral argument on the case of Beyn v. United States Securities & Exchange Commission. We had adjourned this because Mr. Beyn had some medical issues that he was dealing with. I hope you're recovering well, Mr. Beyn. And I just want to make sure you're able to hear me okay. Mr. Beyn, you're able to hear me okay? I can hear you pretty well. Thank you. And Ms. Wagner, are you able to hear me okay? Yes, thank you. All right. So, Mr. Beyn, you have five minutes. I see you reserved one minute for a rebuttal. So, you can begin whenever you're ready. Thank you. May it please the Court, I am Edward Beyn of Perrin Pro Se. I respectfully ask this Court to vacate the SEC's decision affirming Finner's findings and sanctions against me. This decision is procedurally unfair, unduly prejudicial due to the case consolidation, and imposes a disproportionate sanctions that is inconsistent with Finner's own precedence and specific facts of the case. While Finner claimed to have provided me with over five million pages of discovery documents, the reality is these documents were inaccessible and therefore unusable. The record is clear that the hearing officer knew I could not access the discovery at all and proceeded with the hearing anyway, despite my inability to review the documents. Your Honors, the reality is that Finner never made the discovery available to me in any suitable form, neither electronically nor art copies. They did not even offer the option for me to review the documents at their offices. Offering over five million pages in discovery electronically that could not be opened, reviewed, or utilized, Finner is guilty of making a classic document dump. Finner cannot claim it fulfilled its discovery obligations when it never provided me with a single usable document or a meaningful opportunity to access the evidence against me. Despite this, the hearing officer allowed the hearing to proceed, fully aware that I had no access to the evidence. After the hearing, Finner left the record open for 30 days, but this was meaningless gesture without providing actual materials. To review five million pages, even with proper access- Mr. Bain, could I ask you a question, please? My understanding is that Finner produced documents in June 2016, but you raised no objection about their accessibility until January 2017. Is that correct? Your Honor, I was being represented by a lawyer named Paul McMiniman. He withdrew his case. I received the documents beginning of December of 2016, stated in the emails that I provided. That's when I received the hard drive that Finner had sent me and I could not get any access to. Your lawyer had them in June, but you didn't have access until December. Beginning of December, actually. To be exact, December 10th, 2016. I thought, Mr. Bain, that the hearing panel ordered Finner to give technical support to you and Mr. Tadanio to help access the documents. Didn't that happen? They have provided technical support, but them themselves could not open up their own hard drives. We were in communications with Finner's technical support with Chris Lay and other individuals, and these individuals could not open up any of the documents in the hard drive they provided to me. Have you still been unable to access them? I mean, all this time has passed since then. Have you looked at any of the documents? To this day? Yes. I have not had any access to any of the discovery to this day. What kind of documents are you expecting? I mean, most of the documents were produced by the company you were working for, I believe. I don't have any access to any of the documents I was working with. I was not an officer, an owner, a principal. I understand, but what kind of thing are you expecting to find that you think would affect the decision that was made by FINRA? Client communications is one. Demonstrating my client's understanding and consent with the trades. Account statements and trade confirmations from Craigscott Capital and other various firms they dealt with. It would provide me the opportunity to do my own forensics on the case and on the individuals to see their turnover, their losses, their cost of equities, and to obviously see what they have traded in other firms, which obviously, in every type of way, have proven the fact that they've traded similar to the way they've traded with me at Craigscott Capital. I've also needed internal compliance documents, which could have sown a systematic firm-wide issues or evidence of intentional misconduct on their part. It was eight years ago that those documents were made available. They weren't made available. I did not do this. Sorry, I apologize. No, go ahead. You can finish. Go ahead. I did not in any way have any access to the documents. I do not have any access to this data documents. I cannot get into the hard drive. Not only I can't do it, FINRA's own IT department couldn't do it. I went to FINRA, to the offices. All right. We'll ask Ms. Wagner about that, but I guess I don't understand. When the record was kept open for 30 days after the hearing to allow you to supplement the record, after the end of that 30-day period, if you were still having these issues, did you write a letter or a motion or something to say, well, wait a second? I get the question. You said they were going to get back to me, but the IT department could not figure out why we couldn't access, why I couldn't access the documents through their own hard drive. I know, but you didn't ask my questions. Did you ask for more time then? Absolutely, but it fell on deaf ears. I've asked them multiple times, and every time I've been denied. All right. All right. We'll hear from Ms. Wagner, and you have your one-minute rebuttal. Go ahead, Ms. Wagner. Good afternoon. May it please the Court, Brooke Wagner for the SEC. Just to respond to that last question, my understanding is that Mr. Bain did not file any motions or ask for any additional time or additional procedures after the post-hearing procedures. And I would say that the record shows, in fact, that FINRA provided ongoing technical support, and Mr. Bain's other petitioner, Mr. Tudonio, was able to access some of the documents and submit his additional proposed exhibits after the fact. Mr. Bain did not do so. So it's the first time hearing, frankly, of a lot of these things about there being no ability to access or about what Mr. Bain expected to find, because in the many years since this has gone on, Mr. Bain has not put into the brief before us or elsewhere what the documents are that were supposedly important to his case, but he was denied an opportunity to introduce. And again, the FINRA panel here, I think, went out of its way to provide more time and more process and to ensure that the petitioners were able to present any evidence they thought was important and to make their case. So I really don't think there is a lack of process here, and I don't think that Mr. Bain has shown any harm. That's particularly the case, given that he hasn't substantively challenged his liability for excessive trading and churning on this appeal, nor could he, given that the trade data really speaks for itself. So with that, I think we would ask the court to affirm, and I'm happy to answer any questions. Is it true that FINRA had their own problems accessing the documents, that they couldn't even access the documents themselves or not? I'm not aware of that. You know, again, I think if you look at the record from the hearing, FINRA's IT support says he went back and forth a few times, and sometimes there are different passwords for different files and software, but that they did their best to make everything available. And I don't think that, I'm not aware of FINRA having trouble opening their own documents. Do you agree with Mr. Bain that it's possible that some documents, if he were able to access them, that they might show that his clients had an understanding of the risks they were taking or the number of trades that he was engaging in and consented to that? I don't think there's any particular reason to think that that would be in the file. I mean, FINRA produced its entire file here, but the clients testified at length. I don't know that there's any, we already saw, for instance, the affidavits of support and the letters which purported to show their consent to these trades. But as the commission explained, those letters and affidavits aren't helpful in indicating consent because the clients weren't aware of the actual trade costs, the volume of trading, the things that would have actually undergirded their consent. So I really don't think there's any reason to think there's something in the file that would be relevant to Mr. Bain's case. Did Mr. Bain ever lose access to these files after the hearing? In other words, was his access withdrawn once the hearing was over or presumably? I'm not aware of that. I don't know whether at a certain point, you know, access to systems are cut off or something, but I have no reason to know that it is. Okay, all right. All right, unless there are any other questions, we'll move to Mr. Bain's one minute in rebuttal. Go ahead, Mr. Bain. Thank you very much. I made motions throughout the whole proceedings. It was stated in my briefs multiple times and special by Mr. Taddonio. I cannot comment on any of the trading records because I never had access to any of the trading records. But more or less, those affidavits and those active trading letters does discuss the costs and the control that the clients have. They had a clear understanding of what the markups and markdowns were. They had a clear understanding of turnover and cost of equity. And they had a very clear understanding. At the end of the day, they had the full control of the account. They were made well aware of every commission that was charged. Not only that, but I did have access to any of the discovery. You can pull up a lot of the cancel rebills. Clients used to call in and used to reduce their commissions because they knew what they were charged. And they would actually go out and ask the compliance to reduce the commissions because they did have an understanding of the markup and markdowns. In addition to that, all the compliance notes was not made available to me. None of the statements or confirmations were made aware of me. It was made available to me. Nothing was made available to me. And it was brought to them on multiple times. And it fell on deaf ears. Not even their own IT department. People that went to school for tech could not open up their own hard drive. Let me just ask you, Mr. Bain, if you could just help me, because Ms. Wagner says that you did not make the hearing panel aware of this, and I'm focused on that 30-day additional period. So, when the hearing took place and the hearing panel ordered FINRA to give you additional technical support to facilitate whatever ongoing access issues there were, where in the record, just point me in the record where, during that 30-day period, as that 30-day period was expiring, you wrote something in writing to the panel that said, panel, do not close the record because I'm still having access issues. Notwithstanding your order that they provide me access, where in the record, because I did not see that in the record. I want to give you an opportunity just to tell me what page in the record that has that written communication. Okay. I apologize. That is the after fact, but I made motions at the beginning of the hearing. I know, but Mr. Bain, how is the hearing panel supposed to know? The hearing panel heard your motions, and their solution was to order FINRA to give you technical support to solve the problem that you were identifying. So, how is the hearing panel supposed to know that you're still having the issues unless you wrote to them during that final 30-day period and saying, well, wait a second, this is still a problem, and I don't think you did that. I completely understand what you're saying here, but when we went to that 30 days, when we had that open for 30 days, we did go to their home offices. They themselves, the enforcement and their IT department stated that they're going to help me open up my hard drive if they couldn't. So, they said they'll get back to me. It all fell deaf ears. I did not know. Remember, I'm a pro se litigant. I didn't know I had options. I don't understand that the legal matters what to do. All I asked was please get me access to the documents. All I need is to access documents. I was begging them to do it, and they still did not provide me, nor did they have the ability to provide me the documents through their own hard drive. The problem with the whole situation is they gave me a hard drive that I could not access. If I can't access it, on top of that, they couldn't access it. Who else could access the documents? Remember, I didn't have any documents. I am not an owner of Cresa Capital. I couldn't go to a filing cabinet. I was just a registered rep. I was just a broker. All right. I think we understand what the issues are. So, we appreciate you arguing today. We thank both of you, and we're going to reserve decision and issue a written opinion. But they also did, I'm sorry, they also didn't offer me a review of the paper documents. They stated that they had it all at the office. There was no paper documents even available for me. Okay. All right. All right. Thank you very much, Mr. Bain. Thank you, Ms. Wagner. Have a good day. Thank you. Thank you. Thank you.